tion in an attachment suit (*Paine* v. *Moreland*, 15 Ohio, 430), although the proceedings would be irregular and reversible.

The petition in error will be stricken from the files.

---

## LIABILITY FOR SHOCK OF TELEPHONE LINEMAN BY CURRENT LEAKING FROM HIGH TENSION RAILWAY WIRES.

Circuit Court of Lorain County.

THE CLEVELAND, SOUTHWESTERN & COLUMBUS RAILWAY CO. v. KATHERINE CRANDALL, ADMINISTRATRIX.

Decided, December 28, 1909.

*Electric Wires—Joint Use of Poles by Telephone and Electric Railway Companies—Leakage from Railway Wires Causes Death of Telephone Lineman—Pleading—Charge of Court—Assumption of Risk.*

1. Where poles are occupied by the wires of a telephone company and an electric railway company, and an action is brought on account of the death of an employe of the telephone company by reason of a shock received through leakage from the high tension wires of the railway company, it is not error to admit evidence against the railway company, notwithstanding an allegation in the petition that the telephone company had knowledge of the situation and of the danger (if there was danger) to its employe.

2. The allegation in the answer of the railway company, that as a matter of fact neither that company nor the telephone company had knowledge of the leakage and dangerous situation, left the question as to the possession of such knowledge open, and would have rendered a judgment in favor of the railway company on the pleadings erroneous.

3. A charge of court which relieved the railway company from the exercise of any care for the safety of employes of the telephone company while at work on poles used in common by the two companies, with full knowledge by the railway company that through its negligence employes of the telephone company were being placed in a place of danger, would be erroneous.

4. A special charge to a jury is erroneous, where the question of contributory negligence has been raised and the word "might" is so used with reference to the danger encountered that it could be understood to mean a *possibility* of danger.

5. An employe can not be held to have assumed the risk growing out of negligence not of his own employer, but of another corporation.
6. A refusal to give a special charge which properly states the law applicable to the case can not be cured by substituting words more satisfactory to the court than those used in the request.

*A. V. Andrews* and *Q. A. Gillmore,* for plaintiff in error.
*Herrick & Hopkins* and *Ingersoll & Stetson,* contra.

MARVIN, J.; HENRY, J., and WINCH, J., concur.

Error to the court of common pleas.

The relation of the parties to each other here is the reverse to that in which they stood in the court below. The terms plaintiff and defendant, however, used in this opinion, will refer to the parties as they stood in the original case.

Suit was brought by the administrator to recover for the alleged wrongful death of Hubert Crandall, which occurred on the 3d day of August, 1906. At that time Crandall was in the employ of the Elyria Telephone Company, hereinafter spoken of as the telephone company, and the suit was brought against both the Cleveland, Southwestern & Columbus Railway Co., hereinafter spoken of as the railway company, and the telephone company. The telephone company, however, was dismissed out of the case, and the action was proceeded with against the railway company alone, resulting in a verdict and judgment for the plaintiff.

The petition sets out that the railway company operated an electric railroad from the city of Elyria to Grafton, and that upon the poles of the railway company the telephone company had, by an arrangement with the railway company, its wires stretched. The wires of the railway company carried on said poles consisted of four high tension wires, so-called, on which it transmitted an electrical current of about 22,000 volts for the purpose of propelling its cars. There were three of these high tension wires which were insulated by means of glass or porcelain placed on cross-bars attached to the tops of the poles. The railway company also carried on said poles wires known as dispatcher wires; these were also carried on insulators which were fastened to the pole close to the sides, one beneath the other, and some six

or seven feet below said high tension wires. These dispatcher wires were used for telephone purposes by the railway company, and between, in altitude, said high tension wires and said dispatcher wires, the telephone company maintained a cable.

On the 3d day of August, 1906, the decedent, pursuant to instructions from the telephone company, went out along the line from Elyria towards Grafton, for the purpose of ascertaining, if possible, the cause of some trouble which the telephone company was experiencing in the use of the cable. He climbed a pole of the railway company on which wires of both companies were maintained, as already described, and he there received a shock of electricity which caused him to fall to the ground, and resulted within a few hours in his death.

The petition further states that the location of these wires of the railway company and the cable of the telephone company was such that if the current from said high tension wires leaked over or through said insulators and passed down the poles toward the ground, there was great danger and probability that it would pass into the dispatcher's wires, and the msesenger wires forming said cable, and render the same highly dangerous to the lives of linemen working on such poles, and that these facts were well known to both of the defendants.

The petition further states that for several days preceding the 3d day of August, 1906, the railway company negligently and recklessly permitted said high voltage current to leak from said high tension wires into the poles and down and into said messenger or dispatcher wires, or both, and that the plaintiff's decedent met his death through such negligence on the part of the railway company in permitting said leakage to take place, when it well knew of the same, and that said leakage was likely to cause such injuries as those suffered by the plaintiff's decedent.

The answer of the railway company admits the employment of the decedent by the telephone company; admits that it maintained wires on its poles, and that the telephone company also maintained wires on said poles, under an agreement with it, and admits that the decedent met his death at the time alleged in the petition, and denies all other allegations of the petition.

The defendant claims that there was error on the part of the court in admitting any evidence, as against it, over its objection under the petition; and for ground for this claim says that the allegation in the petition that the decedent's employer (the telephone company) had knowledge of the situation and danger, if there was danger, at the place where the decedent was injured, relieved the railway company from any obligation of care to the decedent. It of course admits that if the decedent had been in its employ it would have been required to exercise due care for him, but that its obligation is different to the employes of the other company using with it these poles. In support of this claim there is cited to us the case of *The Cincinnati Gas & Electric Company* v. *Archdeacon,* 80 Ohio St., 27. We do not understand that the doctrine announced in that case sustains the position claimed for it here. The first clause of the syllabus reads:

"When two companies engaged in enterprises calling for the use of wires to carry electricity arrange for the joint use of a pole to sustain them, each company is, with respect to such use, charged with the same duty toward employes of the other as to its own; and the correlative duty of the employes to exercise due care for their own safety is the same as to both companies."

There was no error on the part of the court in admitting evidence under the petition.

The defendant then moved for judgment in its favor on the pleadings. This was properly overruled, for even if the claim made, to which attention had just been called, were correct, the railway company's answer denying, as it did, that either the railway company or the telephone company had knowledge of the dangerous situation at the place where the decedent was injured, the pleadings left this an open question.

It is further urged that the verdict was not sustained by the evidence. We are not prepared to say that this claim is true, and without undertaking to review the evidence we reach the conclusion that the jury might well have believed, that without any negligence on the part of the decedent, and because of the negligence of the railway company, he received the electric shock which either directly caused his death or which caused him to fall with such force upon the ground as to cause his death.

Complaint is further made that the court erred in refusing to give in charge to the jury certain requests which the defendant asked to have given in writing before the argument to the jury. The first request made was given. The second, which was refused, reads:

"If the Elyria Telephone Company knew that there was constant and continuous danger of a leakage of current over or through the insulators and down the poles of the Cleveland, Southwestern & Columbus Railway Company, on the Grafton line here in question, before the injury and death of said Hubert Crandall, then it owed the duty to Hubert Crandall to notify him of such conditions, unless he by the exercise of ordinary care should have known of such dangers; and the Cleveland, Southwestern & Columbus Railway Company was not required, in the exercise of ordinary care, to give notice either to said the Elyria Telephone Co., or to said Hubert Crandall of such conditions."

There was no error in refusing this request. If this had been given the railway company would have been relieved of the exercise of any care for the safety of the employes of the telephone company while they were working on the poles used in common by the two companies, and with full knowledge on the part of the railway company that the employes of the telephone company were being put in a place of danger on their poles which were rendered dangerous by their negligence.

We think the Archdeacon case, *supra,* fully justified the court in refusing this request.

The third request reads:

"If Hubert Crandall knew or by the exercise of ordinary care for his own safety should have known or foreseen that the dispatcher's wires here in question might be charged with a dangerous current of electricity, when he climbed the pole at the time in question, and if he could have avoided said wires by the exercise of ordinary care, your verdict should be for the defendant."

This was refused, and properly.

It must be remembered that when a request is made in writing, to be charged in writing before argument, the court must

refuse to give such request, unless without modification or explanation the request properly states a proposition of law applicable to the case.  If this request had been given it would have in effect instructed the jury that if the deceased by the exercise of ordinary care would have known that the dispatcher's wires might by possibility have had a dangerous current of electricity upon them, it would be negligence on his part not to test them before using.  It will be noticed that the words are "might be charged with the dangerous current."  The words "might be," as used in the sentence asked to be charged, are susceptible clearly of the meaning "were possibly," and so it would have been said to the jury that if Crandall knew that these wires "were possibly" charged, that is that they "might possibly" be charged with the electricity, surely the proposition charged in those words would have been erroneous.

It is true that the words "might be" as here used, are susceptible of the meaning "were probably" or "were likely to be," but they are susceptible of the other meaning also, and so to have given the charge, as requested, would have been likely to mislead the jury, for we may as well suppose the jury would have been as likely to give the meaning first suggested as that last suggested to these words.

Surely it can not be said of one that he is negligent because he takes a cup of coffee at a hotel dinner without first testing or having it tested.  If he knew facts which authorized the belief that there *"might"* be poison in the coffee, using the word "might" in the sense of probability, then he would be negligent in drinking the coffee without testing it, but if he only knew what we all know, that the coffee *"might"* have poison in it, in the sense that it was possible that there was poison in it, then he would not be negligent in drinking it without first testing it.  If this be not true, then all of us who partake of food or drink, without first testing it, are negligent.

The same reason for refusing to give request No. 3 would justify also the refusal to give Nos. 4, 6, 9 and 11.*

---

* For further requests to charge, which are not incorporated in the opinion, see end of opinion.

The refusal to give No. 5 is justified because it puts upon the decedent the burden of assuming risks growing out of the negligence not of his own employer but of another corporation, which is putting a greater burden upon him than the law requires.

No. 7 was properly refused for the reason given in saying that the petition stated a cause of action, and is justified, as we think, by the Archdeacon case, *supra.* This would also justify the refusal to give No. 8. Request No. 10 was properly refused because it would require of Crandall that he should have avoided the dispatchers wires independently of any knowledge on his part that they were dangerous.

No. 16 was properly refused under the Archdeacon case.

Before the argument the court gave in charge to the jury the following:

"It is not charged in the petition that the defendant railway company was negligent in failing to warn or give notice to Hubert Crandall or his employer of the condition of its wires along the Grafton line at and before the accident, and therefore such failure, if such there was, can not be considered by you as a negligent act or omission on the part of said defendant railway company."

Although this was not given upon request of anybody, and though the court was not at liberty to refuse to give any request which was made in writing before argument which properly stated the law applicable to the case, a refusal to give any such request would not be cured by substituting words more satisfactory to the court than those used in the request. However, we have already pointed out that the court was justified in refusing the request made and the matter might well have been left there until after the case was argued, but as what was said by the court here could surely not be complained of by the defendant, because it stated the law on the point as favorably for the defendant as it could be stated, the defendant was not prejudiced by this language of the court, though given before argument.

The charge given by the court at the close of the argument of the case was an admirable statement of the law applicable

to the case.   We think, in every respect, it was not only fair but clear, so that if the result reached was not what it should have been, it was not because of the charge of the court.

Other errors complained of have been examined, but none are found which would justify a reversal of the judgment, and such judgment is affirmed.


CHARGES CONSIDERED BY THE COURT IN THE ABOVE CASE BUT
NOT INCORPORATED IN  THE OPINION.

Request No. 4:

The burden of proof is upon the plaintiff to show, by a preponderance of the evidence that Hubert Crandall did not know, at the time he climbed the pole in question on August 3, 1906, that the wires called dispatcher's wires were in constant danger of being charged with a dangerous current of electricity or might be so charged.   [Refused.]

Request No. 5:

If you find from the evidence that Hubert Crandall was an experienced lineman and had for about four years worked, from time to time in close proximity to wires conveying dangerous electric currents, he will be presumed to have known and assumed the risk of all dangers incident to his employment, which arose from conditions likely to be encountered.   [Refused.]

Request No. 6:

If Hubert Crandall was an experienced telephone lineman, and knew, or by the exercise of ordinary care should have known that, by coming in contact with the dispatcher's wires in question on the occasion alleged in the petition he might receive an electric shock, then it was his duty to avoid said wires, and if he under such circumstances came in contact with either of said wires, and was injured thereby on the occasion in question, the plaintiff is not entitled to your verdict.   [Refused.]

Request No. 7:

There is no claim in the petition that at the time in question the dispatcher's wires in question were charged with any different voltage or current of electrictiy or in any different way than was a common occurrence and was likely to occur at any time, and it is alleged by the plaintiff that the constant danger of such an occurrence was well known to the Elyria Telephone Co. in whose employ said Crandall was working when injured. Under such circumstances, the Cleveland, Southwestern & Columbus Railway Co. owed no duty to either the Elyria Telephone Co. or Hubert Crandall that required special notice to either of them of any special occasion when its said dispatcher's wires were charged with a dangerous voltage of electricity. [Refused.]

Request No. 8:

If you find from the evidence that the dispatcher's wires here in question were so located that only its own linemen, or linemen of a telephone company which was fully aware of all the risks and dangers involved, would come close enough to said wires to create any danger, then the Cleveland, Southwestern & Columbus Railway Co. was not required to give any notice that said wires were, or might be charged with a dangerous current of electricity at the time here in question and is not liable for the injury resulting in the death of Hubert Crandall here sued for. [Refused.]

Request No. 9:

If, in the conduct of its business with ordinary care, the dispatcher's wires in question were likely, at frequent and irregular intervals, and from various causes to become charged with a dangerous voltage of electricity, then it was the duty of Hubert Crandall to exercise ordinary care for his own safety, in view of these conditions, and he assumed the risk of any dangers arising from the fact that said dispatcher's wires might be so charged, when he climbed said pole on the occasion here in question. [Refused.]

Request No. 10:

If Hubert Crandall could, by the exercise of ordinary care, have avoided the dispatcher's wires while climbing said pole, your verdict should be for the defendant.   [Refused.]

Request No. 11:

If Hubert Crandall was an experienced lineman, and was warned to look out for danger before he climbed the pole in question, and failed to take such precaution as ordinary care required to avoid wires which might be dangerously charged with electricity, then your verdict should be for the defendant. [Refused.]

Request No. 16:

If the Elyria Telephone Co. saw fit to place its messenger and cable upon poles owned by the defendant trolley company, and which poles at the time carried high voltage wires and a trolley bracket and exposed dispatcher's wires, it was the duty of said telephone company to conduct its business with reference to the dangers of such a situation, reasonably to have been anticipated; and the defendant traction company was not obliged to change or vary the conducting of its business or to exercise any greater degree of care because telephone linemen might climb said poles, not knowing the dangers of such a situation. [Refused.]